# In the United States Court of Federal Claims

No. 17-673C, No. 17-674C, and No. 17-676C
**CONSOLIDATED**
(Filed: May 13, 2019)

|  |  |  |
|---|---|---|
| CONNECTICUT YANKEE ATOMIC POWER CO., et al., | ) ) ) ) ) ) ) ) ) ) ) ) | Partial Summary Judgment; Rule 56; Recoverability of Attorney's Fees for Overseeing Litigation; Waiver of Sovereign Immunity; American Rule. |
| Plaintiffs, |  |  |
| v. |  |  |
| THE UNITED STATES, |  |  |
| Defendant. |  |  |

**ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

Pending before the court are the parties' cross-motions for partial summary judgment (ECF Nos. 77, 80) under Rule 56(c) of the Rules of the United States Court of Federal Claims ("RCFC"). At issue are the Yankee Atomic Electric Company's, Maine Yankee Atomic Power Company's, and Connecticut Yankee Atomic Power Company's (collectively "plaintiffs" or the "Yankees") claim for the expenses incurred by their in-house general counsel under the retainer agreement that covered all three companies.[1]

The Yankees claim that they are entitled to recover the full amount of the retainer on the grounds that the legal retainer is a damage associated with the Department of Energy's ("DOE") breach of the Standard Contract in which DOE refused to accept

---

[1] Although there are three companies, the Yankees had a joint retainer agreement for the years 2013, 2014, 2015, and 2016 and collectively paid the annual retainer fee. Pl.'s App. 068 (Decl. of Joseph D. Fay) (explaining that each company paid approximately $55,000 per year).

Spent Nuclear Fuel ("SNF") from the Yankees. The United States (the "government") argues that the Yankees are not, as a matter of law, entitled to recover the portion of the retainer fees associated with the time the general counsel spent assisting with the litigation brought by the Yankees against the United States based on DOE's breach of the Standard Contract. The government argues that the United States has not waived its immunity to pay attorneys' fees directly associated with the counsel's work on the breach of contract litigation.

The Yankees respond that the costs of the general counsel services were fixed by the terms of the counsel's retainer agreement, and therefore, bear no relation to time spent overseeing DOE's breach of the Standard Contract litigation. The Yankees further argue that even if the court were to evaluate whether the services performed by the general counsel were litigation related, those services should be deemed ordinary business expenses that can be recovered as a damage for breach of contract.

For the reasons that follow, the court finds that the Yankees cannot recover for the time their general counsel spent on overseeing the DOE breach of the Standard Contract litigation, including the fees charged for reviewing court filings, attending depositions, attending strategy meetings, or preparing for and attending trial. The government's motion for partial summary judgment is **GRANTED**.

I.  BACKGROUND

A.  Prior Proceedings

This case has a long and protracted history that can be briefly summarized as follows. In 1998, the Yankees filed their first complaint alleging breach of the Standard

Contract under which DOE was to accept Spent Nuclear Fuel ("SNF") from the Yankees. *See Yankee Atomic Elec. Co. v. United States*, 73 Fed. Cl. 249 (2006) ("Phase I"). On September 30, 2006, after trial, the Court awarded the Yankees damages resulting from DOE's failure to perform its obligations pursuant to the Standard Contract. *Id*. at 326. On appeal, the Court of Appeals for the Federal Circuit affirmed-in-part, reversed-in-part, and remanded, holding that the trial court had "erred in overlooking the Yankees' burden to prove causation." *Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1273 (Fed. Cir. 2008). Specifically, the Federal Circuit held that, before the Yankees could be awarded any of its claimed costs, the Yankees must present a "comparison of the contractually-defined hypothetical world to the expenses actually incurred," and remanded the case for the trial court to apply the contractually-defined rate of SNF acceptance to determine the Yankees' damages. *Id*. at 1274. On remand, the court awarded damages to the Yankees in the total approximate amount of $143 million. *Yankee Atomic Power Co. v. United States*, 94 Fed. Cl. 678, 736 (2010) (Phase I remand), *aff'd in part and rev'd in part*, *Yankee Atomic Elec. Co. v. United States*, 679 F.3d 1354 (Fed. Cir. 2012). The trial court further determined that, based upon the Standard Contract's contractually-defined SNF acceptance rate and the Yankees' use of the exchanges provision included in the Standard Contract, "all SNF [would have been] removed from Yankee Atomic's [site] by the end of 1999; from Connecticut Yankee's [site] by the end of 2002; and from Maine Yankee's [site] by the end of 2004." *Id.* at

693.[2] The Court did not, however, decide the date by which the Yankees would have completed the decommissioning of their power plants in the non-breach world or the date by which the Yankees would have ceased their corporate existence in the non-breach world.

On December 14, 2007, a second round of SNF complaints were filed in this court seeking costs incurred to operate and construct a dry fuel storage facility ("ISFSI"). *Yankee Atomic Electric Co. v. United States*, 113 Fed. Cl. 323, 326, 328-31 (2012) ("Phase II"). The Government did not dispute the vast majority of plaintiffs' claimed ISFSI costs in Phase II, and the court's decision focused its decision on only previously undecided damage issues. *Id.* at 327. On November 14, 2013, the court awarded the Yankees approximately $235 million in damages. *Id.* at 346-47.

In the third round of cases filed on August 16, 2013, the plaintiffs sought approximately $78 million in newly-incurred damages for costs allegedly caused by the breach of DOE's contract. *See Yankee Atomic Elec. Co. v. United States,* 125 Fed. Cl. 641 (2016) ("Phase III"). During this third round, the Yankees presented models for when, in the non-breach world, they would have been able to fully wind down their business operations. *Id.* at 652. The court found that by 2010, Yankee Atomic and Connecticut Yankee would have been out of business, and by 2008, Maine Yankee would

---

[2]According to the "Exchanges" provision of the Standard Contract, utilities had the right to exchange SNF acceptance allocations with other contract-holders, provided that DOE, "in its sole discretion," could approve or disapprove the request to exchange in advance. 10 C.F.R. § 961.11 Art. V.E (emphasis in original).

have been out of business. *Id.* at 647. As a result, in addition to costs directly related to the need to continue to store spent nuclear fuel on-site, the court determined that the Yankees were entitled to also recover damages for some operational expenses, described as "corporate existence costs," which the court determined would not have been incurred but-for DOE's breach. *Id.* at 654.

The court further found that the Yankees were entitled to certain legal and tax expenses which they had incurred after receiving a payment for damages awarded in Round I of the litigation. *Id*. at 657-58. After receiving the large lump-sum payment, the Yankees incurred costs to meet regulatory filing requirements with the Federal Energy Regulatory Commission ("FERC") and outside counsel fees associated with the determining the tax implications from receiving the large payments. *Id*. The court found that claimed legal fees "were not 'incurred in litigation,' within the plain meaning of that phrase," because the fees were not related to attorney expenses from Round I and "the services at issue were not performed in furtherance of plaintiffs' positions related to any round of this litigation." *Id*. at 658 (citing *Kania v. United States*, 650 F.2d 264, 269 (Ct. Cl. 1981). Accordingly, the court approved the payment of these legal fees as damages.

### B. Current Claim

In the current lawsuit, the Yankees have sought to recover approximately $104 million in damages incurred from January 1, 2013, through December 31, 2016, which the Yankees argue are directly related to DOE's breach. On February 21, 2019, this court granted the Yankees' motion for partial summary judgment and awarded the Yankees approximately $103 million of its claimed damages. This court found that the categories

of costs comprising the $103 million were not in dispute making summary judgment appropriate. *See* Court Order (ECF No. 73) (February 21, 2019). This court also found that a partial judgment, pursuant to RCFC 54(b), was warranted and a final judgment for that amount was issued on February 22, 2019. *See* Court Order (ECF No. 73); Judgment, (ECF No. 74) (February 22, 2019).

The pending cross-motions for partial summary judgment motions now before the court concern a portion of the approximately $1 million remaining in dispute between the government and plaintiffs. The $1 million at issue is divided into the following categories: (1) litigation fees and costs arising from Yankees' defense of asbestos claims and a wrongful termination suit, as well as fees associated with overseeing the DOE breach of the Standard Contract litigation; (2) costs associated with the administration of Yankee's health and welfare benefits plans; (3) costs incurred to research a potential sale of certain land owned by the Yankees; and (4) costs to build a memorial for a former Yankee employee. *See* Compl. (ECF No. 1). The court heard oral argument on these motions on May 9, 2019.

## II.   UNDISPUTED FACTS

With respect to the attorney fees, the following facts are not in dispute. The Yankees have always maintained a general counsel which serves as "the point person for the legal challenges for the companies." Def.'s App. 002 (Pizzella Dep. Tr. at 91:8-17). The general counsel oversees all legal matters affecting the Yankees. Pl.'s Cross-Mot. for Partial Summ. J. ("Pl.'s MPSJ"), App. ("Pl.'s App.") 068 (Decl. of Joseph F. Fay). The

general counsel deals with a "gamut" of legal issues, including those related to asbestos litigation, wrongful termination suits, and changes in regulatory law. Def.'s App. 002 (Pizzella Dep. Tr. at 91:8-25); Pl.'s App. 068. He also provides services directly related to the Yankees' ongoing litigation against DOE including the development and prosecution of those claims. *See* Def.'s App. 002 (Pizzella Dep. Tr. at 92:3-13) (noting that the general counsel's retainer includes DOE litigation related work); Def.'s App. 002 (Pizzella Dep. Tr. at 93:14-18) (noting that the general counsel's invoices reflect work done for DOE litigation); Pl.'s App. 068 (Decl. of Joseph D. Fay) (stating that the general counsel has "overseen the Yankees' litigation against the United States [DOE] based on DOE's continuing breach . . ."). While the Yankees have hired outside counsel to litigate their breach of the Standard Contract claims against the United States, the general counsel monitors the outside counsel's work, consults with outside counsel concerning case developments, and advises outside counsel as to the Yankee's view of their litigation strategy. Pl.'s App. 069. The general counsel has routinely attended witness preparation meetings and depositions, and reviewed document productions. *See, e.g.*, Def.'s App. 029-031 (January 3, 2013 invoice reflecting Mr. Fay spent time reviewing various court filings in December 2012); Def.'s App. 039-041 (December 1, 2014 invoice reflecting witness preparation and deposition attendance in November 2014); Pl.'s App. 070 (Decl. of Joseph D. Fay). The general counsel has also spent time reviewing various court filings in December 2012); Def.'s App. 043-045 (January 2, 2015 invoice reflecting the general counsel attended witness preparation meetings and depositions); Def.'s App. 024 (Pizzella, Dep. Tr. at 2:17 (Nov. 19, 2014) reflecting the general counsel's presence at

7

deposition); Def.'s App. 026 (Norton, Dep. Tr. at 2:16 (Dec. 9, 2014) reflecting the general counsel's presence at deposition); Def.'s App. 028 (Smith, Dep. Tr. at 2:17-23 (Dec. 18, 2014) reflecting the general counsel's presence at deposition).  Pl.'s App. 069-070 (Decl. of Joseph D. Fay) ("I, in turn, have routinely reviewed [motions, briefs, and other court paper] prior to filing to ensure that they are factually accurate and consistent with the Yankees' litigation strategy.").

Additionally, the general counsel has traveled to attend trial proceedings and trial preparation meetings.  *See* Def.'s App. 002 Pizzella Tr. at 94:15-19 ("Q: And how do you know that's related to DOE litigation?  A: Because that's the only litigation being worked on at that time for oral arguments in Washington D.C."); Def.'s App. 055-056 (March 1, 2016 invoice reflecting the general counsel traveled to Washington D.C. to attend oral argument proceedings in February 2016); Def.'s App. 51-52 (August 1, 2015 reflecting the general counsel's attendance at trial and trial meetings); Def.'s App. 47-48 (July 2, 2015 invoice reflecting the general counsel's attendance at trial and participation in trial preparation); Pl.'s App. 070 (Decl. of Joseph D. Fay) ("I often attend depositions and court proceedings, including trial, in the Yankees' DOE cases" and "I have also attended preparation sessions for the Yankees' witnesses in advance of trial and deposition").

To compensate the general counsel for his services as the general counsel, the Yankees pay him a yearly retainer fee of $160,000-$165,000 for performing up to 700 hours of work.  He receives additional compensation for hours he works above 700. Def.'s App. 005-006 (Corrected Revised Expert Report of Jonathan Couchman; Def.'s App. 014-015 (September 11, 2018 Retainer Agreement).  Pl.'s App. 068 (Decl. of

Joseph D. Fay). The retainer amount includes all legal services the general counsel performs for the Yankees – those related to DOE's breach and those that are unrelated. *See* Def.'s App. 002 (Pizzella Dep. Tr. at 92:3-13); Def.'s App. 008 ("in response to the Government's request, the Yankees produce herewith a spreadsheet detailing the general counsel's DOE-litigation related time for the phase IV period); Def.'s App. 010 (setting forth hours that the general counsel devoted specifically to work on DOE's breach of the Standard Contract litigation).

In connection with this phase of the litigation, the parties reviewed the general counsel's billing records, and it is not disputed that he worked a total of 2,543 hours between 2013 and 2016, of which "357 related to his oversight of the DOE breach [of the Standard Contract] litigation[.]" Pl.'s PMSJ at 4; Def.'s App. 005. That amounts to 14% of the total number of hours. Def.'s App. 006. The Yankees provided the following graph showing the number of hours its general counsel spent on litigation related issues:



Pl.'s MPSJ at 4. This amounts to 357 hours or $92,555 in legal fees.

## III. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed Cir. 1987) (quoting *Celotex Corp. v. Cattrett*, 477 U.S. 317, 327 (1986)). "Material" facts are those with the potential to significantly alter the outcome of the case. *Anderson*, 477 U.S. at 247-48. Absent the existence of enough evidence favoring the non-moving party for a jury to return a verdict on that party's behalf, there is no genuine issue of material fact for trial. *Avia Group Int'l, Inc., v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1998), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 671 (Fed. Cir. 2008) (citing *Anderson*, 477 U.S. at 249-250).

### B. Plaintiffs Cannot Recover Legal Fees Incurred In Litigation Against The United States Without An Express Waiver Of Sovereign Immunity

Plaintiffs are entitled to recover money damages from the United States to the extent that Congress has waived sovereign immunity regarding such damages. *See United States v. Shaw,* 309 U.S. 495, 500-01 (1940). Of significance here, Congress has waived sovereign immunity for damage claims based on "any express or implied contract with the United States" brought in the United States Court of Federal Claims. 28 U.S.C. § 1491(a). As the Federal Circuit held in one of the earlier Yankee cases, "the remedy for breach of contract is damages sufficient to place the injured party in as good a position as

it would have been had the breaching party fully performed." *Yankee Atomic Elec. Co.*, 536 F.3d at 1273.

Importantly, however, Congress has not waived its sovereign immunity of the United States to pay legal fees incurred in litigating breach of contract claims in the Court of Claims. Consistent with the "American rule," absent specific legislation waiving the government's immunity for legal fees, "'[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010)). Therefore, absent specific legislation to the contrary, the costs of litigation, including attorney fees, are not recoverable from the United States. *Kania v. United States*, 650 F.2d 264, 269 (Ct. Cl. 1981) ("No matter whether characterized as litigation costs or contract damages, plaintiff's counsel fees are not recoverable in this court."); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *Lake Borgne Basin Levee Dist. v. United States*, 127 Fed. Cl. 321, 337 (2016); *Tex. Instruments v. United States*, 991 F.2d 760, 763 (Fed. Cir. 1993); *Chevron U.S.A., Inc. v. United States*, 71 Fed. Cl. 236, 268 (2006); *Franklin Fed. Sav. Bank v. United State*s, 55 Fed. Cl. 108, 123 (2003).

To be clear, the American Rule does not "preclude recovery of compensatory damages" in contract breach cases. *Chevron U.S.A., Inc.*, 71 Fed. Cl. at 268 (citing *Mass. Bay Trans. Auth. v. United States*, 129 F.3d 1226, 1233 (Fed. Cir. 1997) ("However, the recovery sought by [the plaintiff] is not for attorney fees in an action against the United States, but for damages for breach of a contract to obtain insurance"). Therefore,

"attorney's fees" when properly categorized as compensatory damages for a contract breached by the United States and not "incurred in litigation," may be recovered. However, to the extent the fees were incurred in connection with the pursuit of a recovery of damages in litigation, the legal fees are not recoverable.

## IV.   DISCUSSION

The Yankees assert two grounds for recovery of all their general counsel fees, including the fees incurred for performing the litigation-related activities described above. The plaintiffs assert that the fees are "clearly compensatory" because "the Government's breach caused the Yankees to remain in operation, and in-house counsel expenses are 'a regular cost of doing business[.]'" Pl.'s PMSJ at 6. Second, the Yankees argue that even if the court were to consider the "type of in-house counsel activities" performed by their general counsel to include fees related to the DOE litigation, those fees do not amount to "litigation" expenses. *Id.* at 7, 9.

### A.   The Retainer Agreement

The Yankees argue that the entirety of the amount they have paid their attorney in the retainer agreement is recoverable because the retainer agreement, as a whole, is a regular cost of doing business. In this connection, the Yankees do not dispute that expenses directly incurred by its outside attorneys in this litigation are not recoverable. *Id.* at 2. The government responds that the general counsel's retainer agreement cannot be used as a back door for obtaining litigation-related fees not covered by any waiver of sovereign immunity on the grounds that the retainer agreement is a cost of doing business occasioned by the DOE's breach. The government argues that the Yankees can only

recover for the past legal work authorized by the retainer agreement that is not related to the breach of Standard Contract litigation.

The court agrees with the government. Previously, the Yankees were permitted to recover costs associated with meeting regulatory requirements after receiving "a large payment from the government pursuant to the judgments in the first round of this litigation." *Yankee Atomic Elec. Co.*, 125 Fed. Cl. at 657. In that case, the Yankees did not "seek to recover on invoices from their attorneys in the first round of litigation" nor for services "performed in furtherance of plaintiffs' positions related to any round of this litigation." *Id.* at 658. Indeed, the court held that the Yankees could recover because the costs "were not 'incurred in litigation,'" within the plain meaning of that phrase and "were foreseeable in the event of the government's breach." *Id.* at 658. The court further clarified, "[t]he nature of these expenses, as ordinary and expected in the course of business demonstrates that the parties should have foreseen them as a consequence of breach at the time of contracting." *Id.*

Here, the retainer agreement covered more than work for meeting regulatory requirements or other ordinary legal expenses. The retainer agreement allowed the general counsel to work on litigation and non-litigation matters. *See* Def.'s App. 018 (letter containing terms of retainer agreement authorizing "'in house' general counsel legal and corporate secretarial services" generally). While certain litigation legal fees may be recoverable in this litigation, the retainer agreement here also included payment for work done in the past on the ongoing litigation. *See* Def.'s App. 002 (Pizzella, Dep. Tr. at 92:3-13). Because it was possible for the Yankees' general counsel to perform

work directly related to this litigation under the terms of the retainer agreement, the court finds that the entire fee provided by the retainer agreement is not recoverable. The United States has not waived its immunity for paying any legal fees associated with the past pursuit of this ongoing breach of contract litigation and thus the Yankees may only seek, and the court may only award, fees for legal work not incurred for past work performed in connection with the prior phase of this litigation. *See Yankee Atomic Elec. Co.*, 125 Fed. Cl. at 657.

### B. Past Legal Fees Associated With Hours Spent Working On The Ongoing Breach Of Contract Litigation

Both sides agree that the general counsel spent 357 hours overseeing prior litigation. Pl.'s PMSJ at 4; Def.'s PMSJ at 10. Both sides also agree that the specific fees at issue include legal fees incurred for reviewing litigation documents, attending depositions, meetings with outside counsel, and attending court proceedings as a representative of the Yankees. The Yankees contend that the general counsel's fees should be recoverable because they were not incurred in furtherance of the litigation but instead were incurred by the general counsel as a representative of the client or as a "liaison." Thus, the Yankees contend that the general counsel's 367 hours of legal work related to DOE litigation are not "litigation fees." *See* Pl.'s MPSJ at 2-3. The government in turn argues that because the legal fees at issue were incurred for work performed by

the general counsel to help form litigation strategies and to offer advice to advance the DOE litigation, the fees should be found to be litigation fees. *See* Def.'s Reply at 2-3.[3]

The court finds that the Yankees cannot be compensated for the hours spent by the general counsel reviewing litigation documents, attending depositions, attending litigation meetings with outside counsel, and attending court proceedings. The court finds that all of this work was incurred to assist with the litigation related to DOE's breach. This court previously held that only costs "not performed in furtherance of the plaintiffs' positions related to any round of this litigation" may be recovered. *Yankee Atomic Elec. Co.*, 125 Fed. Cl. at 658.

The Yankees argue that this court's prior holding should not bar their claim for in-house legal fees. The Yankees cite numerous cases for the proposition that where in-house general counsel acts as a liaison, the in-house counsel's work is not part of the attorney's fees awardable under special fee-shifting statutes, including one involving patents, 35 U.S.C. § 285.[4] Pl.'s MPSJ at 8-9. The Yankees urge this court to find that because some courts under fee shifting statutes have concluded that "in-house counsel costs [are not] litigation expenses when outside counsel acted as the lead litigators[,]" in-house counsel fees for work on this ongoing litigation should be compensable. *Id*. at 8-9.

---

[3] The government further argues that to the extent that the court considers whether certain DOE related work may not be fees incurred in litigation against the government, the government challenges as a matter of fact whether these were reasonable compensatory damages. *See* Def.'s Reply at 5 ("We dispute [the general counsel's] assertions about the work he performs."). The court has no occasion to reach this argument because as discussed above it finds that these legal fees are not recoverable.

[4] 35 U.S.C. § 285 provides: "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

Although the issue was not directly addressed in the court's earlier opinion on attorneys' fees, the court made clear that only legal fees not associated with claims arising from the breach of the Standard Contract were recoverable as foreseeable legal expenses. The court based its decision on the consistent rulings of this court and the Federal Circuit that, absent specific legislation authorizing the payment of legal fees in an action against the United States, those fees are not recoverable. The court finds that the fees sought directly relate to the Yankees' breach claims and are therefore not recoverable. The past legal work at issue was done to assist litigation counsel and was not simply an ordinary legal expense. As such, the Yankees' claims for the past in-house legal fees associated with this ongoing litigation must be rejected.

The court further agrees with the government the amount to be deducted from the retainer amounts to $92,555. Def.'s App. 005-006 (Corrected Revised Expert Report of Jonathan Couchman, September 11, 2018).  This number was determined by reviewing the general counsel's billing records and invoices – all of which identify time the general counsel spent working on DOE litigation related matters.  *See Id*.; Def.'s App. 007-010 (Letter from Ritchie to Jantzen dated June 15, 2018 and Attach.); *see also* Def.'s App. 043-045 (January 2, 2015 invoice); Def.'s App. 039-041 (December 1, 2014 invoice); Def.'s App. 029-031(January 3, 2013 invoice). The Yankees have not disputed this amount. Thus, the amount of $92,555 must be deducted from the amount claimed by the plaintiffs for damages associated with their general counsel's retainer agreement.

## CONCLUSION

For the foregoing reasons, the government's motion for partial summary judgment is **GRANTED** and the Yankees' motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge
